6355

## STATE v. ADAMS.

NEW TRIAL.—Motion to suspend judgment on Circuit for leave to move on Circuit for new trial on after discovered evidence will not be granted on ground that a witness in the case swears after the trial that her testimony at the trial is not true and was given under duress.

Before Court *en banc,* September 21, 1906.

This motion was not printed sooner because the Reporter could not sooner get the affidavits upon which the motion was made.

The defendant, R. A. Adams, was tried in Colleton County in March, 1903, jointly with Henry Hoff and W. B. Adams, for the murder of Henry Jaques. Adams was convicted of murder; the others were acquitted. He appealed, and the judgment below was affirmed—68 S. C., 421. In March, 1905, he moved the Circuit Court for a new trial on after discovered evidence. This motion was granted, but on appeal by the State the ruling below was reversed—73 S. C., 435. He then made a motion before this Court for leave to make the motion in the Circuit Court. This Court ordered the motion to be heard by the Court *en banc.*

The principal affidavits on which the motion was based tended to show that Henry Jaques had threatened to take the life of R. A. Adams because he had cursed Jaques' wife. The most important affidavit was that of Mary R. Adams. It is as follows:

"Personally appeared before me Mary R. Adams, who, being duly sworn, says that she is the daughter of Henry M. Jaques, who was killed by one R. A. Adams on the 11th day of February, 1903; that she is the wife of Seal W. Adams, a brother of the said R. A. Adams; that at the time of said killing she resided with her husband near the residence of her father, Henry M. Jaques; that she knew her father had shot the said R. A. Adams at his (Adams') home some time

previous to the killing, and that bad feeling existed between her father and the said Adams; that she expected there would be further trouble between them as she had been informed that they were carrying guns for each other.

"That on the day of the killing she and her husband were at home when Willie Adams came to her house and reported the killing of her father; that she immediately left her home and went to the home of the said Willie Adams; stopping there a few moments, she proceeded to the home of her mother and father. When she got to the gate she was detained by her brother, Thomas Jaques, who objected to her going in the house, when her mother, Kate Jaques, came out and told Thomas to let me come in, which he did; that at that time she was crying and said to Thomas and her mother that she knew this would happen, that Allie (meaning R. A. Adams) would kill her father; that she made this statement because of the trouble between her father and Adams, and not because she had heard Adams make any threats or because she knew of anything of her own knowledge. That when she left her home the evening of the killing her husband, Seal Adams, left at the same time and went to the home of his brother, R. A. Adams; that she did not see him again that day; that she spent the night at her father's home.

"That on the following morning Mr. Martin Jaques and Hogan Dodd called her in the room, and Martin Jaques told her that they had heard that she (deponent) had said that she heard R. A. Adams say that he intended to kill her father; deponent replied by stating that she had not heard Allie say any such thing, but stated that she expected it. I was then told by Martin Jaques that I must swear to certain things against Allie, that if I did not do so he (Adams) would kill all of the family, my mothers and brothers. They also told me that my husband had said that he intended to kill me for having gone over to my mother's house. All of this scared me and I told them I would swear to what they said. They then told me what to say before the Coroner's jury, and I did so. I was told by my mother that I should

not go back to my husband, and from that day until long after the trial of Adams I had no conversation with my husband; although he asked to see me I was not allowed to see him unless some one was present. Everything said by me before the Coroner's jury against Allie, saying that he intended to kill or whip my father, was untrue.

"I again testified in the preliminary examination before the magistrate at Walterboro. I testified to about the same thing that I testified to before the Coroner's jury, and what I said then against Allie Adams was untrue. At this preliminary Mr. Martin Jaques told me that he would sit in front of me and give me signs when to say yes and no to any question that might be asked me by the lawyers, which he did, he having told me what his signs would be before I testified. He, Martin Jacques, urged me to stick to what I had said before the Coroner's jury.

"When I testified in the big court I was urged to stick to the same thing I had testified to before or I would get in trouble. I was again told that Mr. John O. Jaques would sit in front of me and give me signs when to say yes and no to any question that the lawyers might ask me. When I testified Mr. John O. Jaques did sit in front of me in the courthouse and give me signs until Mr. Howell objected to his sitting there and the judge had him moved away. What I stated in my testimony against Allie Adams having made certain statements about killing my father was not true, and I now swear that I have never heard Allie Adams make any threat or statement that he intended to kill my father, and I know nothing of my own personal knowledge about the killing or the shooting prior to the killing. At the time of the killing in this case I was only eighteen years of age, had never been in a court or testified in a case before in my life. I am sorry that I have testified to what was untrue in this case, and only did so because I was told that I must do so by Mr. Martin Jaques and Mr. Hogan Dodd; that if I did not do it that I myself would be injured or killed and others of my family also. I was kept away from any com-

munication with my husband or any one who would advise me and was helpless. As soon as I was relieved of this restraint I told what I am now swearing to, and I felt that I would be guilty of a greater crime to sit quiet and not try to undo the wrong that I have done. I love my father and know that he would not have me to do wrong if he were alive."

The deponent testified on the trial:

"R. A. Adams and Henry Hoff came down home that morning and went over to Willie Adams. After a while they came over home and Allie Adams helped to butcher a hog. I was standing up by the window inside at the mantelpiece and Henry Hoff and Allie Adams came back and Henry Hoff said to Allie Adams, 'If we don't hurry and go Mr. Henry Jaques will be gone.' Allie Adams made answer, 'I intend to kill him with my gun; if I don't kill him with my gun I intend to tie him down hog fashion and beat him until he thinks he is killed.' "

*Messrs. Howell & Gruber* and *J. M. Walker* for the motion.

*Solicitor J. E. Davis,* contra.

September 21, 1906. PER CURIAM. The Supreme Court *en banc* having been duly assembled to consider the motion made in this case for an order permitting defendant to move the Court for a new trial on after discovered evidence and having heard the affidavits submitted and argument of counsel,

It is ordered and adjudged, that the motion be refused and that the case be remanded to the Circuit Court for the purpose of fixing a new day for the execution of the sentence and judgment of the Circuit Court, which has been affirmed by the Supreme Court.

It is further ordered that the order staying the remittitur herein heretofore granted be and is hereby revoked, and that the remittitur be sent down forthwith.

IRA B. JONES, A. J., C. A. WOODS, A. J., GEO. W. GAGE, Circuit Judge, CHAS. C. DANTZLER, Circuit Judge, R. O. PURDY, Circuit Judge, GEO. E. PRINCE, Circuit Judge, R. W. MEMMINGER, Circuit Judge, D. F. HYDRICK, Circuit Judge.

*We dissent.* Y. J. POPE. C. J., EUGENE B. GARY, A. J., JAMES ALDRICH, Circuit Judge, R. C. WATTS, Circuit Judge, J. C. KLUGH, Circuit Judge.